# United States Court of Appeals
## For the First Circuit

Nos. 03-1565
     03-1832
     03-1833

SERGIO DÍAZ-RIVERA, ET AL.,
Plaintiffs-Appellants/Cross-Appellees,

ELIUD MORALES-CANDELARIA, ET AL.,
Plaintiffs,

v.

JOSÉ A. RIVERA-RODRÍGUEZ, ET AL.,
Defendants-Appellees/Cross-Appellants,

QUINTILIO COLÓN-DÍAZ, ET AL.,
Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. Magistrate Judge]

Before

Torruella, Selya and Lipez,
Circuit Judges.

Claudio Aliff-Ortiz, with whom Aldarondo & López Bras was on brief, for plaintiffs-appellants/cross-appellees.
Ismael Rodríguez-Izquierdo, with whom Consuelo Sifre-García, and Sánchez Betances & Sifre, P.S.C., were on brief, for defendants-appellees/cross-appellants.

August 3, 2004

**TORRUELLA**, **Circuit Judge**.  Plaintiffs-appellants Díaz-Rivera, et al. ("plaintiffs"), all former employees of the Municipality of Gurabo, Puerto Rico ("Gurabo"), appeal the district court's judgment in favor of defendants-appellees Rivera-Rodríguez, et al. ("defendants"), arguing that the district court erred in refusing to admit evidence in support of a failure to rehire claim. Defendants cross-appeal from the district court's award of attorney's fees to plaintiffs.[1]  After careful review, we affirm both the judgment and the attorney's fees award.

## I. Background

Prior to the events at issue in these appeals, plaintiffs were employees of Gurabo, holding irregular appointments for fixed periods.  During the course of their employment, plaintiffs' contracts had generally been renewed by Gurabo on a continual and uninterrupted basis.  All were affiliated with the New Progressive Party ("NPP").  On January 19, 2001, following a change of administration brought about by the Popular Democratic Party's ("PDP") victory in the November 7, 2000, general elections, Gurabo terminated plaintiffs' contracts, which would have expired on June 30, 2001, without a prior hearing.  Defendants explained the terminations as a product of budgetary and fiscal considerations.

---

[1]  Plaintiffs also appealed the award of attorney's fees but have subsequently requested that the appeal be voluntarily dismissed.

Plaintiffs allege that the terminations were motivated by discriminatory animus on account of their political affiliation.

Following plaintiffs' terminations, new positions became available at Gurabo financed with funds available due to the approval, on February 14, 2001, of a proposal submitted by Gurabo under 29 P.R. Laws Ann. § 711c ("Law 52"), "a vehicle through which the Commonwealth subsidize[s] locally managed programs to ameliorate unemployment." Gómez v. Rivera Rodríguez, 344 F.3d 103, 107 (1st Cir. 2003).[2]  None of plaintiffs was hired to the Law 52 positions.

On April 2, 2001, plaintiffs filed this political discrimination suit under 42 U.S.C. § 1983, alleging violations of their First and Fourteenth Amendment rights.  During pre-trial proceedings, on June 6, 2002, the district court granted plaintiffs' motion for partial summary judgment on the Fourteenth Amendment due process claim, holding that plaintiffs' continued expectation of employment until June 30, 2001 was terminated without due process of law in violation of Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).

On January 16, 2002, plaintiffs submitted a proposed pre-trial order, which included the following:

---

[2] A detailed account of the Law 52 hirings can be found in Gómez, 344 F.3d at 107-08, which reviews district court proceedings in a political discrimination suit brought by another set of plaintiffs, previously employed by Gurabo on the basis of Law 52 funding, who were terminated on January 30, 2001.

> The Irregular Plaintiffs claim that the financial reason advanced on the Irregular Plaintiffs' termination letter is a mere pretext to conceal the true motive behind their dismissal; _i.e.,_ a political affiliation which is different from defendants' one. Defendants, however, played their politically discriminatory chips shrewdly, and did not hire replacements for the Irregular Plaintiffs; instead, the functions formerly performed by the Irregular Plaintiffs are now carry-out by newly hired employees affiliated to the P.D.P., who were hired on other employment bases, such as Law 52, or transitory contract employments.

On November 21, 2002, the district court issued an order excluding evidence of the Law 52 hirings. On November 27, the district court vacated the order and ruled to permit the introduction of the Law 52 hirings at trial, on the following basis:

> Upon further consideration and analysis, the Court has reconsidered its previous ruling, and shall permit the introduction of such evidence at trial. The Court is convinced that plaintiffs are entitled to have a jury (or judge) determine at trial whether their layoffs were pretextual, as well as whether these were intended to subsequently hire individuals of different political affiliation (pursuant to Law 52) who sympathized with the new municipal administration.

Defendants moved for reconsideration, and during a hearing on December 3, 2002, the court denied the motion, stating:

> I heard arguments. My ruling is that I will allow this evidence as evidence of pretext.
> Obviously it's not a second cause of action, and obviously, damages issues that go to the jury will go. But it's not a separate cause of action as to the failure to rehire. I am allowing it as evidence of pretext.

-4-

During trial, the jury was instructed thus:

> Now, this First Amendment claim which you have before you, this is not a case about failure to rehire. It's a case for dismissal based on political discrimination; however, you may consider evidence of failure to rehire as evidence of pretext or of no pretext for the dismissal.
>
> You are to determine whether that failure to rehire was a pretext or not based on the overall evidence and the facts. But this is not a case about failure to rehire. This is a case about whether the plaintiffs on January 19, 2001, were dismissed based on political discrimination.

On December 23, 2002, the jury returned a verdict in favor of defendants on the First Amendment claim and awarded no compensatory damages to plaintiffs as to their successful Fourteenth Amendment claim. On January 8, 2003, the district court entered judgment for defendants on the First Amendment claim and awarded nominal damages in the amount of one dollar per plaintiff for the due process violation.

On March 14, 2003, the district court entered an order awarding plaintiffs attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976 ("Fees Act"), 42 U.S.C. § 1988, in connection with the due process claim. The court reduced the fees by 33% "since the plaintiffs obtained limited claims-based success and relief." Both parties filed motions for reconsideration of the attorney's fees order.

While the attorney's fees motions remained pending, plaintiffs filed a notice of appeal from the judgment, arguing that the district court erroneously limited the scope and use at trial of the evidence regarding defendants' failure to hire plaintiffs to the Law 52 positions. On April 30, 2003, the district court ruled on plaintiffs' motion for reconsideration of the attorney's fees award and increased the hourly rates, again "reduc[ing] the total fee award by 33% since plaintiffs obtained limited claims based success and relief." Defendants appeal this order.

## II. Analysis

### A. Evidence of Law 52 hirings

We review the district court's evidentiary rulings for abuse of discretion. Cummings v. Standard Register Co., 265 F.3d 56, 62 (1st Cir. 2001)(citing Sheek v. Asia Badger, Inc., 235 F.3d 687, 695 (1st Cir. 2000)).

Plaintiffs argue that the district court erred in admitting evidence regarding the Law 52 hirings only as evidence of pretext, thus precluding its use to support an independent failure to rehire cause of action. Plaintiffs contend that evidence that none of plaintiffs was hired to the Law 52 positions supports a failure to rehire claim under Rutan v. Republican Party of Ill., 497 U.S. 62 (1990). While conceding that their original complaint did not include and was never amended to include a failure to rehire claim, plaintiffs assert that the failure to rehire cause of

action was referred to in the pretrial memorandum of January 16, 2002, amended in November 2002, which was adopted by the trial court in its pretrial order, and thus that evidence of the Law 52 hirings should have been allowed in support of a failure to rehire cause of action. Plaintiffs base this argument on the principle that "[p]retrial statements are to be liberally construed to cover any of the legal or factual theories that might be embraced by their language." Rodriques v. Ripley Indus., Inc., 507 F.2d 782, 787 (1st Cir. 1974)(citing Wright & Miller, Federal Practice & Procedure § 1527 at 609 & n. 47 (1971)).

Defendants argue that their due process rights are in jeopardy, as plaintiffs never amended the complaint and defendants were therefore denied notice and were not provided an opportunity to submit a responsive pleading regarding the failure to rehire claim until days before trial. Although plaintiffs referred to the Law 52 hirings in pretrial memoranda in relation to the question of pretext, defendants contend that this did not amount to sufficient notice of plaintiffs' intent to include a new cause of action and instead appeared as an isolated statement in relation to the pretext aspect of their discriminatory discharge claim, and thus the district court did not abuse its discretion in allowing evidence of the Law 52 hirings only as to pretext. We agree.

Plaintiffs had ample time to move to amend their pleadings under Rule 15 to include a failure to rehire cause of

action. Fed. R. Civ. P. 15(a). They chose not to do so. They contend that their reading of Rodrigues led them to believe that such an amendment was unnecessary and yet they do not, and cannot, provide any authority for the proposition that pretrial statements can routinely be used to augment the claims pleaded in the complaint. In Rodrigues itself, this court affirmed the district court's exclusion of evidence because "we cannot hold that the district court abused its discretion in ruling that plaintiff's murky pretrial statement did not in the circumstances fairly apprise [the defendant] of the [new claim]." Rodrigues, 507 F.2d at 787. The same is true here. A "fleeting mention" of an unpleaded claim in pretrial documents is "not sufficiently informative to satisfy the 'short and plain statement' requirement of Rule 8(a)(2)." Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995). "At a bare minimum, even in this age of notice pleading, a defendant must be afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." Id. We need not address defendants' arguments calling into question the merits of plaintiffs' failure to rehire claim, then, because we, yet again, "cannot hold that the district court abused its discretion in ruling that the plaintiff's murky pretrial statement did not in the circumstances fairly apprise [defendants] of the [failure to rehire] claim." Rodrigues, 507 F.2d at 787. The district court acted within its discretion in

admitting evidence of the Law 52 hirings only as to the question of pretext.

## B. Attorney's fees

Attorney's fees awards are reviewed for manifest abuse of discretion, and "a reviewing court customarily defers to the trial judge, whose intimate knowledge of the nuances of the underlying case uniquely positions him to construct a condign award." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292 (1st Cir. 2001)(citations omitted). "We therefore confine our review to whether the district court has made a mistake of law or incorrectly weighed (or failed to weigh) a factor in its decision." Richardson v. Miller, 279 F.3d 1, 3 (1st Cir. 2002)(citation omitted). In sum, "[t]he trial court's discretion in respect to fee awards is extremely broad." Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992).

Defendants contend that plaintiffs are not entitled to attorney's fees, despite the success of their due process claim, in light of the subsequent judgment dismissing their First Amendment claims and awarding only nominal damages for the due process violation. Defendants argue alternatively that, even if plaintiffs are entitled to attorney's fees, the district court abused its discretion in awarding fees for attorney efforts beyond those

involved in obtaining summary judgment as to the due process claim.[3]

Defendants are correct that a favorable judgment on the due process claim does not lead inexorably to attorney's fees for plaintiffs. The Fees Act provides only that in specified civil rights litigation "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Nevertheless, "[a]lthough this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory." Gay Officers, 247 F.3d at 293 (citations omitted). The first question, then, is whether plaintiffs were properly deemed prevailing parties under the Fees Act based on the success of their due process claim.

It is indisputable that the failure of plaintiffs' First Amendment claims does not preclude the award of attorney's fees for the success of the due process claim. The Supreme Court has emphasized that "the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790 (1989)(emphasis added). "Since the plaintiffs'

---

[3] Defendants do not dispute the hourly rates adopted by the trial court.

effort [to vindicate their due process rights] constituted a discrete claim within a larger case, our focus must not be on who won more claims, but on how the parties fared with respect to the [due process] claim." Gay Officers, 247 F.3d at 294 (citations omitted). With respect to the due process claim, plaintiffs unquestionably prevailed. The district court's declaration that Gurabo's actions violated the Constitution benefits both the plaintiffs and the public, and plaintiffs were thus prevailing parties under § 1988, though awarded only nominal damages. Id. at 295. The Supreme Court has explicitly held that "a plaintiff who wins nominal damages is a prevailing party under § 1988." Farrar v. Hobby, 506 U.S. 103, 112 (1992). The district court did not err in determining that Gurabo's violation of plaintiffs' due process rights "settled a significant issue whose resolution benefitted the plaintiffs and the public," Gay Officers, 247 F.3d at 295, nor in identifying plaintiffs as prevailing parties on that basis.

Nevertheless, defendants point to the Farrar Court's suggestion that a plaintiff who seeks compensatory damages but receives no more than nominal damages is often a prevailing party who should receive no attorney's fees at all. Farrar, 506 U.S. at 115 ("In a civil rights suit for damages . . . the awarding of nominal damages . . . highlights the plaintiff's failure to prove actual, compensable injury . . . ."). In Farrar, however, the plaintiff achieved only a de minimis victory in relation to each of

-11-

"the relevant indicia of success -- the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purposes served." Id. at 122 (O'Connor, J., concurring). Here, although plaintiffs' victory was de minimis as to the extent of relief, the district court appropriately exercised its discretion to award fees, as the determination that the municipality violated plaintiffs' constitutional rights represented a significant legal conclusion serving an important public purpose. In such circumstances, the Supreme Court has explicitly "reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." City of Riverside v. Rivera, 477 U.S. 561, 574 (1986).

Defendants argue in the alternative that the district court abused its discretion in determining that a reasonable fee award could include the total hours worked by plaintiffs' attorneys, including their preparation for and participation in the trial, reduced by one third to reflect the partial nature of plaintiffs' success. Defendants argue that an award of attorney's fees for any efforts expended after the partial summary judgment in favor of plaintiffs constitutes an abuse of discretion, since none of these efforts bore fruit -- plaintiffs' First Amendment claims failed and the jury awarded no compensatory damages in relation to the due process violation. Thus, defendants argue, plaintiffs

cannot be deemed to have "prevailed" as to any claims pursued beyond the pretrial summary judgment in their favor. As noted above, however, the district court's award of nominal damages after trial does indeed alter the legal relationship between the parties in such a way as to justify an award of attorney's fees. Farrar, 506 U.S. at 574.

> A plaintiff may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages. A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay.

Id. at 574. The Farrar Court thus concluded that "[o]nce civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award under Hensley v. Eckerhart, 461 U.S. 424 (1983)." Id. We thus turn to the question of whether the attorney's fees awarded by the district court were reasonable in light of the partial nature of the plaintiffs' success.

In Hensley, the Supreme Court emphasized that "the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." 461 U.S. at 437. This court has reiterated that the district court "is vested with wide discretion and brings to bear

-13-

an ability to weigh against the total background the significance of any contributions and the appropriateness of any award of fees and costs." United States v. Comunidades Unidas Contra la Contaminación, 204 F.3d 275, 283 (1st Cir. 2000). When a plaintiff is successful on some claims, but not others, we exhibit the same "great deference" to the trial court's discretion in adjusting the fees, "motivated by our conviction that 'the decision as to how to separate the wheat from the chaff in a fees contest, within broad limits, is a matter for the district court's discretion.'" Lipsett, 975 F.2d at 941 (quoting United States v. Metropolitan Dist. Comm'n, 847 F.2d 12, 17 (1st Cir. 1988)).

As required by Hensley, 461 U.S. at 436-37, the district court considered the relationship between the extent of success and the amount of the fee award and decided that the partial nature of plaintiffs' success was best reflected by calculating the fees for the total of the attorneys' efforts through trial and then "reduc[ing] the total fee award by 33% since plaintiffs obtained limited claims based success and relief." The district court's rationale for doing so is indicated by its citation to Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1191 (1st Cir. 1996), in which this court summarized the Supreme Court's holding in Hensley:

> Hensley makes clear that where multiple claims are interrelated and a plaintiff has achieved only limited success, awarding her the entire lodestar amount would ordinarily be excessive. Hensley, therefore, counsels that, while "[t]here is no precise rule or formula for

-14-

> making these determinations," a court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."

Id. at 1991 (quoting Hensley, 461 U.S. at 436). The district court viewed the attorneys' efforts to prove damages at trial as to the successful due process claim and their efforts regarding the First Amendment claims as interrelated, and it chose the second of the options identified in Hensley for reducing the total award to account for the plaintiffs' partial success, simply reducing the total award rather than attempting to identify specific hours to be eliminated. The district court thus fulfilled its obligations to "provide a concise but clear explanation of its reason for the fee award" and to "make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." Hensley, 461 U.S. at 437. The district court found this to be a case "[w]here it would be an 'exercise in futility' to separate out the legal services rendered for each claim, [so] the fee should simply be determined as a function of degree of success." Lipsett, 975 F.2d at 940-41 (quotations and citations omitted). We have confirmed elsewhere, following Supreme Court precedent, that "when a civil rights suit consists of multiple claims, and when the plaintiff prevails on some but not on others, the plaintiff is entitled to fees for hours worked not only on the successful civil rights claims, but also on other claims involving a 'common core of facts' or 'related legal theories.'" Aubin v. Fudala, 782 F.2d

-15-

287, 291 (1st Cir. 1986)(quoting Hensley, 461 U.S at 435). Here, defendants "have done little to carry their burden of showing that hours which the district court found to be hopelessly blended were in fact segregable," and the First Amendment claims involved "a tightly wrapped core of common facts shared with the claims upon which the plaintiff prevailed -- a circumstance that lends great credibility to the district court's decision." Lipsett, 975 F.2d at 941. Regardless of whether "we, if writing on a pristine page, might have been more miserly, we are constrained in this instance to defer to the trial court's determination that the requisite linkage was forged." Id. at 941.

### III. Conclusion

For the reasons stated above, we affirm the district court's decision to admit evidence of the Law 52 hirings only as evidence of pretext. We also affirm the district court's attorney's fees award.

**Affirmed**.