**PREMIER HOMES AND LAND CORPORATION, Plaintiff**

v.

**CHESWELL, INC., Defendant**

**No. CIV.A. 02–30118–KPN.**

United States District Court, D. Massachusetts.

Dec. 19, 2002.

David J. Noonan, Amherst, for Premier Homes and Land Corporation, Plaintiff.

Felicity Hardee, Bulkley, Richardson & Gelinas, Deborah D. Ferriter, Bulkley, Richardson & Gelinas, Springfield, for Cheswell, Inc., Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO SUPPLEMENT TO DEFENDANT'S MOTION TO DISMISS (Docket No. 26)*

NEIMAN, United States Magistrate Judge.

Presently before the court is that part of Defendant Cheswell, Inc. ("Cheswell")'s motion to dismiss which seeks fees and costs from Plaintiff Premier Homes and Land Corporation ("Premier"). The underlying motion was allowed and the action was dismissed with prejudice after Premier indicated to the court during a November 6, 2002 hearing that it had withdrawn its opposition. All that remains for the court's consideration, therefore, is Cheswell's request for fees and costs totaling $31,255.99. In response, Premier acknowledges Cheswell's right to fees and costs, but disputes the amount requested, suggesting instead that Cheswell receive $21,095.99 and that Premier be permitted to pay that amount within ninety days. For the reasons which follow, the court will allow Cheswell's request in the amount of $24,845.99, which amount shall be paid by Premier by March 19, 2003.[1]

## I. BACKGROUND

On or about July 15, 2002, Premier filed this summary process action in the Massachusetts Superior Court alleging that Cheswell was unlawfully occupying the premises at 35 Main Street, Belchertown, Massachusetts, because of its "deliberate and intentional failure to comply with [the Schedule 1.12 Addendum to] the Ground Lease dated 9–12–01." The action was removed to this court on July 17, 2002. Among the documents attached to the complaint, in addition to the Ground Lease, was a Schedule 1.12 Addendum and an e-mail purportedly sent by James Loney ("Loney"), a Cheswell stockholder, to James Kenney ("Kenney"), Premier's President, on December 18, 2001. These two documents formed the core of Premier's claim that Cheswell failed to comply with the terms of the Ground Lease.

On August 28, 2002, in a related action involving the same parties, *Cheswell, Inc. v. Premier Homes & Land Corp.*, Civil Action No. 02–30115–KPN (the "lease action"), Cheswell filed an ex parte motion to preserve certain evidence and expedite the production of electronic records. In its motion and supporting affidavits, Cheswell alleged that both the Schedule 1.12 Addendum and the December 18, 2001 e-mail were fabricated by Kenney and that it was therefore necessary to allow Cheswell's consultants to create mirror images of Premier's computer hard drives, back-up tapes and other data storage devices. The court allowed Cheswell's motion and issued an implementing order on September 2, 2002.

After Cheswell's consultants began mirror-imaging the electronic evidence, Premier's counsel disclosed to the court and then to Cheswell's counsel (and later to counsel for Monson Savings Bank, Premier's co-defendant in the lease action) that Kenney had just admitted to him that the Schedule 1.12 Addendum was not in existence on the date the Ground Lease was signed and that Kenney had fabricated the December 18, 2001 e-mail.

---

1. The parties have consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b).

On October 1, 2002, Cheswell filed its motion to dismiss. Cheswell asserted that Premier, through Kenney, knowingly committed a fraud upon the court with the purpose of gaining an advantage in the parties' dispute and that dismissal of the complaint was the only appropriate remedy. In response, Premier contended that dismissal was unjustified and requested that, at most, the court impose less drastic sanctions. As described, Premier later withdrew its opposition and the motion was allowed. Presently before the court is Cheswell's request for fees and costs.

## II. DISCUSSION

■ As the First Circuit has explained, it is "elementary that a federal district court possesses the inherent power to deny the court's processes to one who defies the judicial system by committing a fraud on the court." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989). A fraud on the court occurs, the First Circuit continued, "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* At bottom, the court retains the inherent power to take such steps as are necessary to deter abuse of the judicial process, including dismissal of the action and levying of an appropriate monetary sanction. *See id.* at 1119; *Hull v. Municipality of San Juan*, 230 F.Supp.2d 239, 248 (D.P.R.2002) (applying *Aoude* ).

■ Here, it is quite clear that Premier abused the judicial process; it wilfully engaged in a scheme to deceive the Superior Court and, in turn, this tribunal. Premi-

er's asserted right to evict Cheswell from the Belchertown property was grounded in fabricated evidence attached to Premier's complaint. Moreover, as indicated, the disputed evidence—the Schedule 1.12 Addendum and the December 8, 2001 e-mail—were central to Premier's cause of action. Finally, Premier was both persistent and intentional in its actions, first by knowingly filing the fabricated evidence in the Superior Court and then by attempting to utilize that evidence here. *See Aoude,* 892 F.2d at 1119 (client's fabrication of document which he gave to unwitting lawyer who, with client's knowledge, attached it to the complaint is a "near-classic example" of fraud on the court).

Cheswell's claim for fees and costs, totaling $31,255.99, is comprised of $13,118.64 for its computer consultants' fees and costs ($11,300 is fees and $1,818.64 is costs) and $18,137.35 in attorney's fees. In seeking to reduce the amount to $21,095.99, Premier raises a number of objections and it is to those objections that the court now turns.

### A. Consultants' Fees and Costs

With respect to the consultants' fees and costs, Premier raises five objections. First, it asserts that the court should not award fees for the eight hours the consultants expended on August 2, 2002, reformatting, reconstituting or otherwise working on Cheswell's own computers. "Any such work," Premier argues, "was not necessary to producing any of the information which supported [Cheswell]'s Ex Parte Motion." (Premier's Objection (Docket No. 29) at 1.) The court disagrees. For one thing, Premier does not support its argument other than in conclusory terms. More importantly, the work on Cheswell's computers, in the court's estimation, was made necessary, at least in part, by Premier's doctored e-mail. Specifically, Kenney,

Premier's President, fabricated the e-mail by pasting most of a heading from an earlier, legitimate message and altering the subject matter line. It was necessary to analyze Cheswell's computers in order to determine the origin of the disputed message.

■ Second, Premier objects to the consultants' apparent lack of contemporaneous time records. There is little question that an attorney's lack of contemporaneous records "call[s] for a substantial reduction in any [attorney's fees] award, or, in egregious cases, disallowance." *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984) (cited with approval in *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 297 (1st Cir.2001)). *See also Rolland v. Cellucci,* 106 F.Supp.2d 128, 135 (D.Mass.2000) (deeming fifty percent reduction appropriate for non-contemporaneous billing records). But, unlike attorneys, computer consultants are not necessarily knowledgeable about such requirements. That is not to say that such consultants would never be required to keep contemporaneous records. Here, however, the time claimed to have been expended is not so facially inappropriate as to require any reduction.

These same considerations apply to Premier's third and fourth objections, namely, that the consultants failed to delegate certain responsibilities to less expensive employees and "double-billed" for their work. There is insufficient evidence that a less expensive employee would have been available or appropriate or that duplicative work was undertaken.

■ In contrast, Premier's fifth concern—that the consultants' $200 hourly rate is too high—has merit. Supported by affidavit, Premier argues that, at most, an hourly rate of $100 is appropriate. The court agrees and, accordingly, will reduce the consultant's total ($11,300) by one-half (to $5,650).

B. *Attorneys Fees*

The only objection which Premier has to Cheswell's claim for attorney's fees, totaling $18,137.35, concerns $760 charged by an "RLF" on September 10, 2002, to "attend Day 2 of mirror imaging." Premier asserts, "upon information and belief," that during the same period of time RLF "brought a substantial amount of work relating to cases other than counsel's representation of [Cheswell] and presumably billed [those other] client[s] for RLF's services over the same period." (Plaintiff's Objection at 3.)

Without testing this hypothesis, the court does believe that an eight hour reduction is appropriate for the over sixteen hours expended by RLF on both September 9 and 10, 2002. There appears to be no reason that all that time was reasonable or necessary. Accordingly, the court will reduce the attorney's fees claimed by $760.

### III. Conclusion

For the reasons stated, the court ALLOWS Cheswell's request for fees and costs in the total amount of $24,845.99, said amount to be paid by Premier no later than March 19, 2003.

IT IS SO ORDERED.