Mario ESTIVERNE and Natividia Antoine, individually and on behalf of their infant children, Andrew Estiverne, Dyan Estiverne, and Mario Estiverne, Jr., Plaintiffs,

v.

Debra ESERNIO–JENSSEN, individually and as a physician, Long Island Jewish Medical Center, North Shore–Long Island Jewish Health Systems, Inc., and John Johnson, individually and as commissioner of the New York State Office of Children and Family Services, Defendants.

No. 06 CV 6617(NG)(RLM).

United States District Court,
E.D. New York.

May 23, 2012.

Carolyn A. Kubitschek, David Lansner, Christoper S. Weddle, Jill Marie Zuccardy,

Lansner & Kubitschek, New York, NY, for Plaintiffs.

Jonathan B. Bruno, Katherine Dianne Gotelaere, Milli D. Shah, Paul J. Colucci, Kaufman, Borgeest & Ryan LLP, Robert L. Kraft, New York, N.Y. for Defendants.

### OPINION & ORDER

GERSHON, District Judge.

Plaintiffs bring this motion, pursuant to 42 U.S.C. § 1988(b), seeking attorney's fees from John Johnson ("State Defendant"), individually and in his official capacity as former Commissioner of the New York State Office of Children and Family Services ("OCFS").[1] To the extent indicated below, plaintiffs' motion is granted.

### I. BACKGROUND

On November 30, 2004, the OCFS received a report of suspected child abuse, filed against plaintiffs Antoine and Estiverne ("Adult Plaintiffs"). The OCFS immediately referred the report to the New York City Administration for Children's Services ("ACS"), which began an investigation the same day. On January 25, 2005, while the investigation was in its early stages, but after ACS had already obtained a temporary order of removal of Adult Plaintiffs' three children, ACS informed Adult Plaintiffs that they were the subject of an "indicated" report of child abuse and maltreatment, which is recorded on the OCFS Central Register.[2] ACS also informed plaintiffs that they had 90 days to challenge the indicated designation.

---

1. Mr. Johnson's term has since ended. The current Commissioner is Ronald E. Richter.

2. Within 60 days of initiating an abuse investigation, ACS is required to determine whether a report is "indicated" or "unfounded." N.Y. Soc. Serv. Law § 424(7). A report is indicated if there is "some credible evidence of the alleged abuse," and unfounded if there is not, and the report is recorded on New York State's Central Register. Id. § 412(6), (7). Certain employers, such as licensing or provider agencies whose employees may have "regular and substantial contact with children," are required to inquire of the OCFS as to whether a prospective employee has an indicated report. Id. § 424-a.

*See* N.Y. Soc. Servs. Law § 422(8). Plaintiffs did not challenge the designation within 90 days.

On September 16, 2005, after concluding its investigation, ACS voluntarily withdrew its complaint, without prejudice. On January 6, 2006, plaintiffs requested an opportunity to challenge the indicated designation. State Defendant denied their request as untimely. On February 3, 2006, in anticipation of her future nursing school making an inquiry of the OCFS, plaintiff Antoine renewed her request to challenge the indicated designation. State defendant again denied Antoine's request. Plaintiff Antoine would be allowed, however, to challenge her designation when and if her nursing school made an inquiry of the OCFS, prior to the OCFS disclosing the indicated designation. *Id.* § 424–a.

On December 13, 2006, plaintiffs commenced this action, alleging, *inter alia*, that State Defendant's failure to provide plaintiff Antoine with a name-clearing hearing *prior* to an employer's inquiry was a violation of her Due Process rights under the Fourteenth Amendment. On June 22, 2007, plaintiffs moved for a preliminary injunction requiring State Defendant to provide Antoine with an immediate name-clearing hearing and preventing State Defendant from disclosing Ms. Antoine's indicated report unless and until such a hearing was held.

On July 6, 2007, I granted plaintiffs' request for a preliminary injunction, finding, first, that plaintiff established irreparable harm because a favorable determination from the State Central Register was essential to plaintiff's ability to enter into a clinic rotation in pediatric nursing. Even if plaintiff were afforded a name-clearing upon the hospital's inquiry, the delay in responding to the hospital would clearly put it on notice of an indicated report and would therefore affect plaintiff's liberty in-

terest in pursuing her chosen profession. Second, I found a clear likelihood that denying plaintiff an immediate name-clearing hearing was a denial of her Fourteenth Amendment Due Process rights. A preliminary injunction was therefore entered; it ordered State Defendant to conduct a name-clearing hearing and to issue a final determination by July 31, 2007, and precluded State Defendant from disclosing to any potential employer, prior to resolution of the hearing, Adult Plaintiffs' indicated report.

On August 7, 2007, State Defendant moved for judgment on the pleadings of plaintiffs' complaint. After State Defendant served his motion, he informed the court that plaintiffs had been provided with the name-clearing hearing that was required by the court's preliminary injunction, that the OCFS had amended the report against plaintiffs from indicated to unfounded, and that the report had been sealed. I dismissed as moot plaintiffs' only remaining claim against State Defendant, namely, plaintiffs' claim for declaratory relief. *See Estiverne v. Esernio–Jenssen*, 581 F.Supp.2d 335 (E.D.N.Y. 2008).

Plaintiffs now move, pursuant to 42 U.S.C. § 1988(b), to recover their attorney's fees associated with drafting the injunctive portion of their complaint, settlement negotiations with State Defendant, their motion for preliminary injunctive relief, and their defense against State Defendant's motion for judgment on the pleadings.

## II. DISCUSSION

Under 42 U.S.C. § 1988(b), a court "may allow the prevailing party ... a reasonable attorney's fee as part of the costs...." In order to qualify as a prevailing party, a plaintiff requesting attorney's fees must "receive at least some relief on

the merits of his claim" which "create[s] [a] material alteration of the legal relationship of the parties...." *Buckhannon Bd. & Care Home v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (internal citations and quotations omitted). Specifically, in the context of a preliminary injunction, "a decision to award attorney's fees requires an analysis of whether the party's relief ... resulted from a determination of the merits." *Haley v. Pataki,* 106 F.3d 478, 483 (2d Cir.1997). If an injunction is not "clearly based on the merits, a court should not resolve the uncertainty in favor of a finding that plaintiff prevailed." *Id.*

In response to plaintiffs' motion for fees, State Defendant argues that plaintiffs were not prevailing parties with regard to the preliminary injunction. State Defendant asserts that Ms. Antoine's nursing school never in fact made an inquiry of the OCFS and therefore plaintiffs "were not benefitted by the preliminary injunction." State Def.'s Mem. of Law, at 8. State Defendant also argues that plaintiffs' request for a preliminary injunction led to an "unnecessary mooting of the case," thereby denying State Defendant the ability to obtain a final judgment on the merits.

State Defendant further argues that, if the court finds that plaintiffs prevailed with respect to the preliminary injunction, it should nevertheless reject two categories of attorney's fees submitted by plaintiffs: those associated with plaintiffs' unsuccessful settlement negotiations with the OCFS or State Defendant and those associated with their response to State Defendant's motion for judgment on the pleadings. State Defendant argues that, because plaintiffs were not successful in either of these endeavors, they cannot be considered prevailing parties. Finally, State Defendant asks the court to reduce any award by deducting redundant billings.

## A. Attorney's Fees for the Preliminary Injunction

■ The July 6, 2007 oral decision, granting plaintiffs' request for a preliminary injunction, was based on the court's assessment of the merits of plaintiffs' Due Process claims. As plaintiffs argued, and as the court found, plaintiffs demonstrated both irreparable harm and a clear likelihood of success on the merits. *See Haley,* 106 F.3d at 483 (affirming an award of attorney's fees, after issuance of a preliminary injunction, where the district court required a showing of likelihood of success on the merits).

State Defendant's argument that plaintiff Antoine did not receive the benefit of the injunction is unpersuasive. The focus is on whether there was a "material alteration of the legal relationship of the parties." *Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835. Here, there was such an alteration. Plaintiffs requested an immediate name-clearing hearing from State Defendant and that State Defendant be enjoined from disclosing the abuse report unless and until State Defendant confirmed the indicated finding. Plaintiffs were awarded precisely this relief, which is relief that State Defendant, prior to the injunction, refused to provide. *See also Valmonte v. Bane,* 18 F.3d 992, 999 (2d Cir.1994) (holding that, a plaintiff's "presence on the Central Register ... is a direct threat not only to her reputation but to her employment prospects," and therefore a Due Process claim requesting a name-clearing hearing is ripe for consideration even prior to an employer's inquiry).

■ That plaintiffs' claims against State Defendant were ultimately dismissed as moot is irrelevant. A determination of mootness "neither precludes nor is pre-

cluded by an award of attorney's fees." *Haley,* 106 F.3d at 483–84.

Therefore, plaintiffs will be awarded attorney's fees for time expended in obtaining the preliminary injunction, including time spent drafting that part of the complaint directed at State Defendant.

### B. Attorney's Fees for Settlement Negotiations

■ State Defendant next argues that plaintiffs should not be awarded attorney's fees for unsuccessful settlement negotiations.

In discussing the calculation of attorney's fees awarded to a prevailing party under 42 U.S.C. § 1988(b), the Supreme Court has stated that, " 'where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee,' and that 'the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.' " *Riverside v. Rivera,* 477 U.S. 561, 569, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The Court further stated that Congress "made clear" that, " 'Counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, *for all time reasonably expended on a matter.*' " *Id.* at 575–76, 106 S.Ct. 2686 (emphasis in the original) (quoting S.Rep. No. 94–1011, p. 6 (1976), 1976 U.S.C.C.A.N. 5908, 5913); *see also Couch v. Continental Cas. Co.,* 2008 WL 131198, at *5, 2008 U.S. Dist. LEXIS 2327, at *12 (E.D.Ky. Jan. 11, 2008) (awarding attorney's fees for time spent in settlement negotiations, in an ERISA action, because "settlement discussions are an ordinary part of the litigation process").

Moreover, as other courts have recognized, disallowing attorney's fees for settlement negotiations, successful or other-wise, would have the effect of discouraging attorneys from pursuing pre-trial settlements. *See Trainor v. HEI Hospitality LLC,* 2012 WL 119597, at *10, 2012 U.S. Dist. LEXIS 4558, at *32 (D.Mass. Jan. 13, 2012); *Nat'l Union Fire Ins. Co. v. Hartel,* 782 F.Supp. 22, 25 (S.D.N.Y.1992).

Here, plaintiffs have indeed obtained an "excellent result," as the court afforded them (with respect to State Defendant) all the relief they sought. In addition, State Defendant does not allege that plaintiffs participated in the settlement negotiations in bad faith or that the negotiations were in any way different from the settlement discussions that occur in the ordinary course of any civil litigation. Plaintiffs will therefore be awarded attorney's fees for time spent in settlement negotiations with State Defendant.

### C. Attorney's Fees for Responding to State Defendant's Motion for Judgment on the Pleadings

■ Finally, State Defendant argues that plaintiffs are not entitled to attorney's fees associated with their response to State Defendant's motion for judgment on the pleadings.

Plaintiffs' unsuccessful attempt to continue their action against State Defendant, after Adult Plaintiffs received a name-clearing hearing, presents a significantly different issue from plaintiffs' unsuccessful settlement negotiations. Unlike the settlement negotiations, which occurred *in pursuit* of the relief plaintiffs sought, plaintiffs' unsuccessful attempt to continue the action against State Defendant occurred *after* plaintiffs received the relief they sought. Indeed, plaintiffs admit that "the requested preliminary injunction provid[ed] plaintiffs with *all the relief which they had sought.*" Pls.' Reply Mem. of Law, at 3 (emphasis added).

Moreover, to the extent that plaintiffs continued to pursue relief distinct from the preliminary injunction (*i.e.*, a declaratory judgment), the continued action was unsuccessful. Although, as plaintiffs correctly point out, a party may be entitled to attorney's fees for unsuccessful claims if they are "inextricably intertwined" with successful claims, *see Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999), that is not the case with plaintiffs' continued action against State Defendant. At the point that plaintiffs' counsel chose to continue the action against State Defendant, there were no remaining claims with which the declaratory relief was intertwined. Plaintiffs' sole remaining claim for declaratory relief was moot, and there is no basis for fees.

### D. Calculation of Attorney's Fees

Finally, it remains to be determined what the amount of the attorney's fee award will be. Plaintiffs have requested an award of $57,012.50 in attorney's fees for 254.9 hours of work, in addition to $929.30 in costs.[3] This includes $400 per hour for two partners, $300, $250, and $200 per hour for three associates, $100 per hour for law students and legal assistants, and $25 per hour for clerks. As discussed above, I will not award attorney's fees for work performed on the unsuccessful response to State Defendant's motion for judgment on the pleadings. It appears from plaintiffs' billing statement that counsel expended approximately 24 associate hours and 6 partner hours on the response.

■ A court's starting point for determining a presumptively reasonable fee is to multiply "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289 (2d Cir.2011). The reasonable hourly rate should be "what a reasonable, paying client would be willing to pay," given that such a party wishes "to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir.2007). In addition, when determining the reasonable hourly rate, courts must consider the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974).[4]

■■ Turning now to the reasonableness of plaintiffs' requested hourly rates and hours billed, I find that a reduction in both is appropriate. With regard to the requested hourly rates, plaintiffs' attorneys, who are located in Manhattan, in the Southern District of New York, have stated that their standard billing rates are $400 an hour for partners and between $200 and $300 an hour for associates. However, courts presume that a reasonable rate is the "going rate in the district in which [it] sits." *Lochren v. Cnty. of*

---

**3.** Plaintiffs, in an exercise of "billing judgment," declined to bill for an additional 31.95 hours of work.

**4.** The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6)

whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

*Suffolk,* 344 Fed.Appx. 706, 708 (2d Cir. 2009) (quoting *Arbor Hill,* 522 F.3d at 193). Although a party may overcome this presumption by "persuasively establish[ing] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result," *Simmons v. N.Y.C. Transit Authority,* 575 F.3d 170 (2d Cir.2009), plaintiffs have made no such showing.

There are an abundance of cases, approved by the Second Circuit, discussing the appropriate billing ranges in the Eastern District of New York. Courts have found the range to be $200 to $400 for partners, and $100 to $295 for associates. *See Konits v. Karahalis,* 409 Fed.Appx. 418, 422–23 (2d Cir.2011) (collecting cases and approving the district court's approximation of $300 to $400); *Melnick v. Press,* 2009 WL 2824586, 2009 U.S. Dist. LEXIS 77609 (E.D.N.Y. Aug. 28, 2009) (exhaustively surveying recent Eastern District case law and concluding that "cases in this District indicate[ ] that the range of appropriate billing rates is $200–$375 per hour for partners and $100–$295 per hour for associates"). Here, the issues involved in the preliminary injunction were not overly complex or difficult; only one aspect was novel. The circumstances surrounding the injunction do not appear to have imposed any unusual burdens or time constraints (approximately seven months passed between the complaint and preliminary injunction motion), and there is nothing about the case that would render it undesirable. On the other hand, plaintiffs' counsel are highly experienced in the area, and they obtained exactly the relief that plaintiffs sought. Therefore, although a

reasonable hourly rate in this case lies toward the high end of the range, the case does not call for the highest approved rate in the District. I find a reasonable rate to be $350 for partners and $200 for associates. The hourly rate for law students, assistants, and clerks will not be reduced.

■ After deducting the 30 hours spent on plaintiffs' response to the motion for judgment on the pleadings, discussed above, they expended a total of 224.9 billable hours principally associated with the preliminary injunction, but including other recoverable activities described above, such as settlement negotiations. They expended this significant number of hours despite the fact that counsel characterized the law as "clearly established." *See* Pls.' Reply Mem. of Law, at 2. More importantly, however, it was counsel themselves who "established" the law. As counsel states, "In *Valmonte v. Bane,* 18 F.3d 992 (2d Cir.1994) [the case on which plaintiffs most substantially relied], the law firm of Lasner Kubitschek Schaffer & Zuccardy established the right of individuals ... to hearings to clear their names *prior* to being denied employment." Kubitschek Aff., ¶ 10. Plainly, then, counsel were already substantially familiar with the issues and law involved in this case. Therefore, I find that a 25% across-the-board reduction in hours is appropriate.[5] *See Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998) ("[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.").

■ In sum, after reducing counsels' billable hours by 30, the time sheets reflect

5. This reduction also takes into account redundant and unnecessary billings, such as law students who attended conferences and hearings, and who billed for both their time of attendance and travel. *See* Pl.'s Ex. 1, at 3.

Plaintiffs designated some, but not all, of these hours as non-billable. Likewise, the reduction accounts for partially ambiguous billings, such as "Meeting with co-counsel re: overview of case, SCR issues." *Id.*

41.9 hours billed for partners, 97.9 hours for associates, 81.8 hours for law students and assistants, and 3.3 hours for clerks. After further reducing the hours by 25% and calculating the total award based on the reasonable hourly rate discussed above, plaintiffs are hereby awarded $31,878.87 in attorney's fees.

### E. Costs

Plaintiffs also request $929.30 for the costs they incurred in pursuing injunctive relief. Under § 1988, plaintiffs are entitled to recover costs as well as attorney's fees. *Luessenhop v. Clinton Cnty.*, 558 F.Supp.2d 247, 271 (N.D.N.Y.2008). State Defendant does not appear to dispute plaintiffs' request for costs, and my review finds them to be both reasonable and the type of "out of pocket disbursements which are ordinarily charged to clients." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (1989). Accordingly, I award plaintiffs all of these requested costs.[6]

### III. CONCLUSION

In sum, plaintiffs are awarded $32,808.17 in attorney's fees and costs.

**SO ORDERED.**

---

6. Included in plaintiffs' itemized costs are two lines associated with Westlaw research, which is generally considered a part of attorney's fees, and not costs. *See U.S. ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr.* *Corp*, 95 F.3d 153, 173 (2d Cir.1996). However, because the dollar amount associated with these costs is *de minimis*, and because I have already adjusted plaintiffs' attorney's fees sufficiently, no adjustment will be made.