# United States Court of Appeals
## For the First Circuit

No. 20-2083

NELSON JOSÉ PÉREZ-SOSA,

Plaintiff, Appellant,

v.

MERRICK B. GARLAND,*
UNITED STATES ATTORNEY GENERAL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. William E. Smith,** U.S. District Judge]

Before

Barron, Selya, and Lipez,
Circuit Judges.

Judith Berkan, with whom Mary Jo Méndez and Berkan/Méndez were on brief, for appellant.
Mónica P. Folch, Assistant United States Attorney, Southern District of New York, with whom Audrey Strauss, United States Attorney, Southern District of New York, and Benjamin H. Torrance, Assistant United States Attorney, Southern District of New York, were on brief, for appellee.

---

* Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr as the defendant-appellee.

** Of the District Court of Rhode Island, sitting by designation.

January 7, 2022

**SELYA**, **Circuit Judge**.  Once the parties had resolved this bitter employment discrimination dispute, a secondary squabble erupted over the amount of attorneys' fees due to the prevailing party (plaintiff-appellant Nelson Pérez-Sosa).  The district court reviewed detailed submissions from the parties and awarded the plaintiff $170,331.56 in attorneys' fees.  The plaintiff challenges the architecture of the fee award and argues that it does not reasonably compensate the attorney for her time.

Stripped to its essentials, the plaintiff's appeal challenges the structural integrity of the fee award on the basis of seven distinct rulings.  After careful consideration, we affirm all but two of those rulings, reverse those two rulings, vacate the fee award, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

For several years, the plaintiff headed the appellate practice of the United States Attorney's Office for the District of Puerto Rico (the Office).  During that time frame, the plaintiff appeared as a witness in support of two colleagues, Carmen Márquez-Marín (Márquez) and Francisco Reyes Caparrós (Reyes), each of whom had complained of discriminatory or otherwise improper conduct by the Office, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17.  In separate proceedings, Márquez and Reyes both won jury verdicts against the

Office.  See Márquez-Marín v. Barr, 463 F. Supp. 3d 165, 172 (D.P.R. 2020); Reyes Caparrós v. Barr, No. 15-2229, 2020 WL 1487267, at *1 (D.P.R. Feb. 28, 2020), appeal docketed, No. 20-1792 (1st Cir. Aug. 19, 2020).  In addition, Márquez brought a further suit, which is still pending.  See Márquez-Marín, 463 F. Supp. 3d at 288 (denying summary judgment).

Some details are helpful.  In 2006, the plaintiff testified against the Office at trial in Márquez's original action, which arose from the termination of her employment at the Office. As a result of that action, Márquez was reinstated by court order. Márquez's return to her duties was stormy, and the plaintiff provided testimony favorable to her in further proceedings before the Department of Justice's Equal Employment Opportunity (EEO) officers.  The plaintiff also provided testimony favorable to Reyes with respect to his EEO complaint against the Office.

In April of 2016, the plaintiff was passed over for reappointment as Chief of the Appellate Division of the Office (a position he had held, under one title or another, for over twenty years).  Having not been reappointed to his leadership role — a demotion that he believed was linked to his earlier testimony — the plaintiff reverted to the position of line attorney.  He proceeded to file his own EEO complaint against the Office, alleging constructive discharge in retaliation for his support of his complaining colleagues, and then resigned that December.  After

that proceeding ran its course, the plaintiff filed suit in the district court, alleging discrimination and retaliation under Title VII.[1] See 42 U.S.C. § 2000e-16(a); see also Green v. Brennan, 578 U.S. 547, 551 n.1 (2016) ("assum[ing] without deciding that it is unlawful for a federal agency to retaliate against a civil servant for complaining of discrimination"). For this purpose, the plaintiff retained Maricarmen Almodóvar-Díaz (Attorney Almodóvar), a sole practitioner in Puerto Rico who has handled civil rights and employment discrimination matters since 1992.

From the outset, a visiting judge was assigned to preside over the plaintiff's case — and that same judge continued to preside over the ancillary fee-award proceedings. For nearly three years, the parties sparred over discovery and other issues. Progress was slow: no significant depositions were taken and no dispositive motions were filed.

In February of 2020, the parties negotiated a settlement. Under the terms of the settlement, the plaintiff received a lump-sum payment of $450,000 plus reasonable attorneys' fees. The amount of the fee award was left open, to be resolved by further negotiation or — in default of an agreement — by the district court.

---

[1] The plaintiff named the Attorney General of the United States as the defendant. See 42 U.S.C. § 2000e-16(c). For ease in exposition, we treat the Office as if it were the named defendant.

- 5 -

With the fee amount still up in the air, the plaintiff moved for an award of $385,043.75. In support, he urged the district court to endorse a rate of $325 per hour for Attorney Almodóvar's time and to apply that rate to almost 1,200 hours of claimed work. The Office filed an opposition, and the plaintiff made a further filing in response.

The district court, in an unpublished rescript, set out its findings and awarded the plaintiff a total of $170,331.56 in attorneys' fees. We sketch the parameters of that award.

Employing the lodestar method, the court fixed Attorney Almodóvar's hourly rate at $275 for time expended on core legal work and $165 for time expended on non-core work (including travel). In the process, it eliminated all time spent on settlement negotiations and in connection with the Márquez and Reyes matters. It proceeded to subtract hours that it deemed excessive or unproductive and discounted hours too vaguely recorded. Then, the court applied "an across-the-board 25% cut" for what it perceived as "inflated" billing. Finally, the court rejected the Office's suggestion that the fee award be slashed due to the munificence of the settlement. The court explained that "[t]he settlement award was reasonable for this case" and, thus, reducing the fee because of the size of the award "would . . . disincentivize an efficient settlement process in future Title VII cases."

Viewing the award as unreasonably low, the plaintiff appealed.

## II. ANALYSIS

We review a challenge to an award of attorneys' fees for abuse of discretion. See Gay Officers Action League v. Puerto Rico (GOAL), 247 F.3d 288, 292 (1st Cir. 2001). Of course, a material error of law is perforce an abuse of discretion. See id. Absent a material error of law, "we will set aside a fee award only if it clearly appears that the trial court ignored a factor deserving significant weight, relied upon an improper factor, or evaluated all the proper factors (and no improper ones), but made a serious mistake in weighing them." Id. at 292-93.

The Supreme Court has cautioned against "appellate micromanagement" of fee awards. Fox v. Vice, 563 U.S. 826, 838 (2011). In the same spirit, we have noted that the "trial court's discretion in respect to fee awards is extremely broad." Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). There is good reason for this respectful attitude. The record that reaches an appellate court is more or less antiseptic and sometimes fails to capture the nuances of the litigation. We appear in the ring after the prize fight has ended. In contrast, the court below, having refereed the bout round by round, has had an opportunity to watch the bobbing and weaving, take the measure of all the punches thrown and deflected, and assess which blows landed and which were nothing

more than wild swings. That vantage point affords the court special insight into each side's training, instincts, skill set, and tactics. It follows that the district court's perspective on the efficiency and quality of the lawyers' work is unmatched, see United States v. Metro. Dist. Comm'n, 847 F.2d 12, 14-15 (1st Cir. 1988), and its determinations deserve "substantial deference," Fox, 563 U.S. at 838.

Where, as here, a federal statute paves the way for fee-shifting, a prevailing plaintiff cannot simply name his prize and expect the opposing party to foot the bill. The statute underpinning the fee award in this case — section 706(k) of Title VII of the Civil Rights Act of 1964 — is typical of the genre. It authorizes the court to award "the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). This provision was designed "to 'make it easier for a plaintiff of limited means to bring a meritorious suit.'" N.Y. Gaslight Club, Inc. v. Carey, 447 U.S. 54, 63 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 420 (1978)).

The Supreme Court has explained that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010). Although Perdue involved a different fee-shifting statute, 42 U.S.C. § 1988, the Court has made pellucid that its "case law construing

- 8 -

what is a 'reasonable' fee applies uniformly to all" federal fee-shifting statutes couched in similar language. City of Burlington v. Dague, 505 U.S. 557, 562 (1992).

A common way of determining a reasonable fee is through the lodestar method. See Perdue, 559 U.S. at 552. We have described this approach as "the method of choice for calculating fee awards." Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015). The lodestar amount equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Calculating this amount requires two steps (which may be followed by a final corrective gesture).

First, the court must "calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise unnecessary.'" Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014) (quoting Hensley, 461 U.S. at 434). Second, the court must identify "a reasonable hourly rate or rates — a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." Id. Multiplying the results of the first two steps yields the lodestar amount. See id. The court may then elect to adjust the lodestar amount, either upward or downward, if the

specific circumstances of the case warrant such an adjustment. See Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 & n.3 (1st Cir. 1997) (stating that court may adjust lodestar amount in accordance with twelve factors); see also Perdue, 559 U.S. at 554 (holding that enhancement is permitted only in "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered").

The lodestar method, properly applied, "yields a fee that is presumptively sufficient to achieve" the underlying purposes of fee-shifting. Perdue, 559 U.S. at 552. Although this method requires arithmetical calculations, we must bear in mind that the district court's task in fashioning a reasonable fee — and ours, too — "is to do rough justice, not to achieve auditing perfection." Fox, 563 U.S. at 838. Because district judges "need not, and indeed should not, become green-eyeshade accountants," they "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Id.

With this framework in place, we turn to the district court's construction of the lodestar. In shaping the lodestar, the court made a series of embedded rulings. Refined to bare essence, the plaintiff's appeal challenges seven of those rulings.

We start with two rulings that we find problematic: the district court's conclusions that time expended in settlement

negotiations and time expended in performing work that implicated other cases, distinct but related, must categorically be excluded from the fee award. We then discuss the plaintiff's five remaining challenges.

**A.    <u>Time Spent on Settlement Negotiations</u>.**

The district court disallowed 13.75 hours that counsel claims to have spent in negotiating the settlement. The court explained that "[t]he weight of authority cautions courts against awarding fees for time engaged in settlement negotiations, lest it disincentivize defendants from participating in such discussions." In support, the court relied on two cases: <u>Janney Montgomery Scott LLC</u> v. <u>Tobin</u>, 692 F. Supp. 2d 192 (D. Mass. 2010) and <u>Osorio</u> v. <u>Municipality of Loiza</u>, No. 13-1352, 2016 WL 3264122 (D.P.R. June 14, 2016). As relevant here, those cases stand for two closely aligned propositions:  that "[s]ettlement negotiations are not normally considered in the lodestar calculation" and that the "institutional policy favoring settlement" requires deducting settlement time from the fee award so as not to "discourage parties from engaging in such negotiations." <u>Janney</u>, 692 F. Supp. 2d at 198; <u>accord</u> <u>Osorio</u>, 2016 WL 3264122, at *7. These decisions do not represent the weight of authority, and we reject the propositions for which they stand.

The justification for paying an attorney for time reasonably spent in settlement negotiations is strong. In civil

rights cases, Congress wanted a prevailing plaintiff's attorney to be compensated "for all time reasonably expended on a matter." Blanchard v. Bergeron, 489 U.S. 87, 91 (1989) (quoting S. Rep. No. 94-1011, at 6 (1976)).  Because civil rights may be vindicated equally as well by efficacious settlement as by dogged litigation, see Maher v. Gagne, 448 U.S. 122, 129 (1980), appropriate exploration of settlement is time well spent and, therefore, compensable.

We hold that a court should include time reasonably expended in settlement negotiations within the lodestar when calculating attorneys' fees.  This holding does not break any ground:  many other courts have so held.  See, e.g., Ngena Found. v. F&R Crous Found., No. 20-793, 2021 WL 1546457, at *4 (D.D.C. Apr. 20, 2021) (citing cases); Estiverne v. Esernio-Jenssen, 908 F. Supp. 2d 305, 310 (E.D.N.Y. 2012); Trainor v. HEI Hosp. LLC, No. 09-10349, 2012 WL 119597, at *10 (D. Mass. Jan. 13, 2012), aff'd in part, vacated in part on other grounds, 699 F.3d 19 (1st Cir. 2012).  Indeed, in Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp. — the seminal case that "pioneered" the lodestar approach, Perdue, 559 U.S. at 551 — the Third Circuit included "settlement negotiations" among the classes of compensable work.  487 F.2d 161, 167 (3d Cir. 1973).

To be sure, fee-shifting statutes should not be read to "darken prospects for settlement." Evans v. Jeff D., 475 U.S. 717, 735 (1986).[2] Even so, the district court's forecast that settlements will be frustrated by allowing compensation for time reasonably expended in settlement negotiations is unduly pessimistic. We think it is unrealistic to assume that the marginal cost of counsel's work on settlement will scare off defendants in a substantial number of cases. Litigants settle cases because doing so is cheaper and less risky than fighting tooth and nail to the bitter end. The extra expense of compensating time reasonably spent in settlement negotiations scarcely alters this calculus. Nor will attorneys be tempted to drag out talks unnecessarily because the court will later trim away time wasted as unreasonably expended.

In sum, time reasonably spent in pursuit of settlement is worthwhile and, therefore, generally fit for inclusion in a fee award. Speculative concerns about misguided incentives do not sap the force of this conclusion. Because the district court erred as

_____

[2] In Evans, the Supreme Court's holding that settlements sometimes may entail a "negotiated waiver of attorney's fees" rested in part on the fear "that parties to a significant number of civil rights cases will refuse to settle if liability for attorney's fees remains open." 475 U.S. at 732, 736. Although Evans referred to a distinct statute, 42 U.S.C. § 1988, the Court's reasoning applies four-square to Title VII's analogous fee-shifting provision. See Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 758 n.2 (1989).

a matter of law in categorically excluding time spent on settlement negotiations from the lodestar calculation, we reverse its ruling. On remand, the district court should augment the fee award by allowing credit for all time reasonably spent by the plaintiff's counsel during the course of settlement negotiations.

### B.    Time Spent on Work Connected to Other Cases.

The district court categorically excluded 43.75 hours relating to work done by the plaintiff's lawyer in connection with the Reyes and Márquez matters.  This work included preparing the plaintiff for both his deposition in the Márquez litigation and his testimony at the Reyes trial.  It also included the lawyer's attendance at the Reyes trial.  Even though the district court "acknowledge[d] that the strength vel non of Plaintiff's testimony in those cases weighed directly on [his] ability to secure a settlement in the instant case," it nonetheless concluded — as a categorical matter — that "work done in one case is not properly recovered in a distinct case under a fee-shifting statute."

The district court's view is not without some support in the case law.  In Barrett v. Salt Lake County, the Tenth Circuit held that a prevailing Title VII plaintiff may not recover attorneys' fees for time spent in navigating the employer's optional grievance process even if such work was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation."  754 F.3d 864, 870 (10th Cir. 2014) (internal

- 14 -

quotations omitted) (quoting Pennsylvania v. Del. Valley Citizens'
Council for Clean Air (Delaware Valley), 478 U.S. 546, 561 (1986)).
There, the court decided that the useful-and-necessary standard
does not apply to actions under Title VII. See id. at 870-71; cf.
Binta B. ex rel. S.A. v. Gordon, 710 F.3d 608, 631 (6th Cir. 2013)
("[W]e are troubled by the idea of ever permitting plaintiffs'
counsel to receive fees for work performed in a completely separate
case.").

We do not agree. To determine "the number of hours
reasonably expended on the litigation," Hensley, 461 U.S. at 433,
an inquiring court must look not to labels but, rather, to the
nature of the work and its utility to the case at hand, see Delaware
Valley, 478 U.S. at 561. That "look" is not constrained by the
four corners of the particular case. See Nat'l Ass'n of Concerned
Veterans v. Sec'y of Def., 675 F.2d 1319, 1335 (D.C. Cir. 1982).
Instead, a court should award fees for all hours logged in
connection with work that is "'useful and of a type ordinarily
necessary' to secure the final result obtained from the
litigation." Delaware Valley, 478 U.S. at 561 (quoting Webb v.
Bd. of Educ., 471 U.S. 234, 243 (1985)); see Hutchinson ex rel.
Julien v. Patrick, 636 F.3d 1, 15 (1st Cir. 2011). This standard
controls even when that work implicates some other case. See
Schneider v. Colegio de Abogados de P.R., 187 F.3d 30, 32-33 (1st
Cir. 1999) (per curiam) (applying the "useful and of a type

- 15 -

ordinarily necessary" standard to "work done in the [Puerto Rico] courts before the filing of the federal lawsuit").

We see no reason why this useful-and-necessary standard should not apply in Title VII actions. The Supreme Court treats the standard as versatile, deploying it in cases implicating such disparate statutes as 42 U.S.C. § 1988, see Webb, 471 U.S. at 243, the Clean Air Act, see Delaware Valley, 478 U.S. at 561, and the Employee Retirement Income Security Act of 1974, see Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps., 571 U.S. 177, 189-90 (2014). And we have followed suit in a case under the Americans with Disabilities Act. See Hutchinson, 636 F.3d at 15. Concluding, as we do, that there is no principled basis for exempting Title VII cases from the reach of this standard, we hold that the standard applies to such cases. Accord Green v. Adm'rs of the Tulane Educ. Fund, 284 F.3d 642, 662 (5th Cir. 2002); Bobbitt v. Paramount Cap Mfg. Co., 942 F.2d 512, 514 (8th Cir. 1991).

The upshot is that Title VII's fee-shifting provision, 42 U.S.C. § 2000e-5(k), should be construed as treating all useful and ordinarily necessary legal work as performed "for the litigation," even if the work was done outside the four corners of the particular case. Ray Haluch, 571 U.S. at 189. Building on this foundation, we hold that, in constructing the lodestar in a Title VII case, the district court may award attorneys' fees to a

prevailing plaintiff for time reasonably expended in connection with a separate but related case. To be compensable, though, the time expended must be devoted to work that is useful and of a type that is ordinarily considered necessary to the matter at hand.[3] As the Ninth Circuit aptly put it, "the award of fees should cover 'every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect [her] client's interest' in the case at bar." Armstrong v. Davis, 318 F.3d 965, 971 (9th Cir. 2003) (quoting Hasbrouck v. Texaco, Inc., 879 F.2d 632, 638 (9th Cir. 1989)).

To say more on this point would be supererogatory. The district court's per se exclusion of counsel's time in connection with the Márquez and Reyes matters from the fee-award calculus constituted an error of law and must be reversed. On remand, the

---

[3] Everything depends on context. On the one hand, preparing a client for his testimony in a separate but related case may well bear fruit (depending on the circumstances) when the client's own case is tried or when a settlement is in prospect. See Green, 284 F.3d at 662 (awarding Title VII plaintiff attorneys' fees for time spent on depositions in distinct workers' compensation suit because "[t]he workers' compensation case made available to [the plaintiff]'s counsel information and discovery which was necessary to effectively litigate the Title VII claim"); Campbell v. District of Columbia, 202 F. Supp. 3d 121, 134-35 (D.D.C. 2016) (awarding fee to civil rights plaintiff for time counsel spent on depositions in distinct but related action against other defendants when "depositions . . . aided her attorneys' trial preparation" and "provided evidence for trial"). On the other hand, sitting through an entire trial of a separate but related case in hopes that a nugget of new information will surface may well be over the top (depending on the circumstances) in terms of advancing the client's case.

district court should augment the fee award by allowing credit for all time reasonably spent by the plaintiff's counsel in performing useful and ordinarily necessary work in connection with those matters.

### C. **The Remaining Challenges**.

This leaves the plaintiff's five remaining challenges, which we address sequentially.

1. **Hourly Rates**. The plaintiff challenges the district court's choice of a reasonable hourly rate for Attorney Almodóvar's core legal work.[4] With respect to fee-shifting, the reasonable hourly rate in any given case "will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria." United States v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named "Flash II", 546 F.3d 26, 38 (1st Cir. 2008). For guidance in setting an appropriate rate for a particular attorney's time, courts look to a constellation of factors, including the rate that the particular attorney "actually charges to clients in the ordinary course of [her] practice" and "data evidencing the

---

[4] Although the plaintiff also challenges the district court's allocation of attorney time into discrete rubrics (core and non-core), see infra Part II(C)(2), he does not separately make a developed challenge to the rate — $165 per hour — assigned by the court to time devoted to non-core work. Consequently, any such challenge is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

prevailing market rate for counsel of comparable skill." Hutchinson, 636 F.3d at 16. "The fee-seeker must carry the burden of establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialled counsel." Id.

In the fee petition, the plaintiff sought a flat rate of $325 per hour for all of Attorney Almodóvar's time. For her part, Attorney Almodóvar professed to be unable to establish her own standard billing rate because for many years she had been paid either on a contingent-fee basis (that is, a percentage of the recovery gained for her client) or on the basis of a negotiated lump sum. To fill this void, she pointed to billing rates previously used in calculating fees for other attorneys of like experience practicing in Puerto Rico. See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of Carolina, No. 16-1207, ECF No. 608 (D.P.R. Feb. 6, 2019) (fashioning fee award under 42 U.S.C. § 1988 and concluding that $315 per hour was "in line with sophisticated federal litigators who handle complex issues"); Reyes Cañada v. Rey Hernandez, 411 F. Supp. 2d 53, 56 (D.P.R. 2006) (setting counsel's rate at $300 per hour for in-court time and $275 per hour for out-of-court time in fee-award dispute). In addition, she submitted an affidavit from a San Juan attorney to the effect that $325 per hour was a reasonable rate "in this

community for an attorney of [Attorney Almodóvar's] experience, reputation and skills."

Other evidence, though, indicated a lower range of rates. As a magistrate judge observed not long before the plaintiff filed his fee petition in this case, "[a] review of attorney's fees awarded in the District of Puerto Rico indicates hourly rates hovering around $250 to $300 for experienced attorneys." Skytec, Inc. v. Logistic Sys., Inc., No. 15-2104, 2019 WL 1271459, at *5 (D.P.R. Mar. 15, 2019) (awarding $275 per hour to San Juan attorney with "thirty-five years of experience in civil and commercial litigation"). A district judge, in an earlier case, found "$250 per hour to be comparable to rates paid to . . . experienced civil rights attorneys practicing in the San Juan metropolitan area." Navarro-Ayala v. Governor of P.R., 186 F. Supp. 3d 128, 137 (D.P.R. 2016).

The court below, in its own words, "survey[ed] the parties' submissions and the cited authorities." It then set an hourly rate of $275 for Attorney Almodóvar's core legal work. The plaintiff challenges this determination.

District courts have wide discretion in selecting fair and reasonable hourly rates for attorney time. See Lipsett, 975 F.2d at 937; Metro. Dist. Comm'n, 847 F.2d at 17. This discretion is especially wide where, as here, a district judge has presided over a case from its inception and has had an opportunity to

measure a particular attorney's level of skill and diligence at first hand. See Matalon, 806 F.3d at 638; Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008). Nothing in the record persuades us that the district court abused its wide discretion in setting Attorney Almodóvar's hourly rate.

It was the plaintiff's burden to establish the market rate for comparable services with "satisfactory evidence." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); see Bordanaro v. McLeod, 871 F.2d 1151, 1168 (1st Cir. 1989). Most often, there is not a single reasonable rate for legal services but, rather, a range of reasonable rates. See Metro. Dist. Comm'n, 847 F.2d at 17. Here, the plaintiff's attorney had no standard billing rate, and the extrinsic evidence shows a range of reasonable rates. Although each party dismisses the other's proffered authorities as "outliers," we think that the evidence before the district court supported a conclusion — on this chiaroscuro record — that the market rate for experienced litigators in San Juan encompassed a spread from $250 to $300 per hour. Given this spread, it was within the realm of reason (and, thus, within the district court's discretion) to set Attorney Almodóvar's hourly rate at the mid-point.

In an effort to undermine this determination, the plaintiff makes two arguments. First, he suggests that the district court's determination deserves diminished deference

because the judge was a visitor who was "[u]nfamiliar with attorney rates in Puerto Rico." This argument is unconvincing.

To start at the beginning, the plaintiff's lengthy service in the Office made the assignment of an out-of-district judge to preside over his case virtually inevitable. The plaintiff does not dispute that Judge Smith was duly assigned to preside by order of the Chief Judge of the First Circuit. See 28 U.S.C. § 292(b). Consequently, Judge Smith — though a visitor — possessed the full panoply of judicial powers needed for adjudication of the litigation. See id. § 296. Seen in this light, the judge's rulings are entitled to the same deference as those of any other district judge.[5] See United States v. Green, 89 F.3d 657, 660 (9th Cir. 1996) ("[T]he law does not recognize any difference in the authority of a district judge visiting from another court versus a judge assigned permanently to that district."); Allstate Fin. Corp. v. Zimmerman, 296 F.2d 797, 799 n.2 (5th Cir. 1961) (same).

We know of no authority — and the plaintiff has cited none — that alters the standard of review for fee awards made by a visiting judge. What authority there is points in the opposite direction. See, e.g., Arizona v. ASARCO LLC, 773 F.3d 1050, 1060-

---

[5] Although a district court may "rely upon its own knowledge of attorney's fees in its surrounding area in arriving at a reasonable hourly rate," Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996), Judge Smith made no pretense of doing so here. Instead, he appropriately relied on the parties' submissions and case law.

61 (9th Cir. 2014) (en banc) (applying abuse-of-discretion standard to visiting judge's fee award under Title VII). District judges are generalists. Their usual work requires them to receive and process evidence, absorb the import of that evidence, apply the law, and render fair and impartial decisions. There is no requirement that the judge have independent knowledge of the subject matter. Just as a judge who is not trained in mechanical engineering may hear evidence and determine whether a particular machine is defective, so too a judge who does not regularly preside in a particular jurisdiction may hear evidence about attorneys' hourly rates and determine what rate is reasonable for a specific lawyer in that jurisdiction.

Second, the plaintiff faults the district court for not giving weight to a Puerto Rico statute (Act No. 402 of May 12, 1950, as amended) that bars an employee's attorney from charging the employee for work done on claims against the employer. See P.R. Laws Ann. tit. 32, § 3115. Withal, the plaintiff did not advance this argument before the district court: his only mention of the statute was in connection with his explanation as to why Attorney Almodóvar did not have an established hourly rate for her work. We therefore deem the argument waived. See Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not

- 23 -

raised squarely in the lower court cannot be broached for the first time on appeal."); McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

    **2.  Non-Core Legal Work**.  The district court reduced the hourly rate for 392.75 hours of "non-core" legal work to $165.[6] As the plaintiff concedes, binding circuit precedent allows a district court, when constructing a fee-shifting award, to "set two separate hourly rates for a particular attorney — one for 'core' tasks like 'legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders' and a lower one for 'non-core' tasks, which are 'less demanding,' such as 'letter writing and telephone conversations.'"  Matalon, 806 F.3d at 638 (quoting Brewster v. Dukakis, 3 F.3d 488, 492 n.4 (1st Cir. 1993)).  He nonetheless argues that applying the distinction between core and

---

[6] The district court identified the non-core legal work as comprising "20 hours of travel, 39.25 hours of deposition and trial transcript review and summarization, 169.25 hours of non-deposition, non-trial related meetings with Plaintiff, 60.75 hours of routine telephone calls, emails, and other correspondence, 44.75 hours of consultations with third parties/experts, 33.75 hours of discovery-related entries, 18 hours of docket management, and 7 hours of drafting and issuing boilerplate documents like deposition notices."  The notion that work of this sort should be treated differently did not come out of the blue:  after the Office filed its opposition to the fee petition and raised this point, the plaintiff conceded that a 10 percent reduction would be appropriate with respect to attorney time spent on communications with the client, opposing counsel, witnesses, and experts.

non-core work was unreasonable in this instance because (he says) such a practice "is virtually unheard-of in Puerto Rico." He also argues that the district court abused its discretion by "mechanically" applying the core/non-core distinction. Neither argument gains him any traction.

It is true, of course, that a fee award must accommodate regional variety because the fee is "calculated on the basis of rates and practices prevailing in the relevant market." Missouri v. Jenkins, 491 U.S. 274, 286 (1989). Here, however, the plaintiff has put forth nothing to indicate that Puerto Rico is not subject to the discipline of the market for legal services in the way in which we have understood that market to operate in the mainland. Consequently, he has failed to show that the market for legal services in Puerto Rico is immune from the same real-world constraints on lawyers that exist elsewhere.

We have said before — and today reaffirm — that, in general, "clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 308 (1st Cir. 1998) (quoting Lipsett, 975 F.2d at 940). Although this is not a "hard-and-fast rule[]," Matalon, 806 F.3d at 639, the district court's choice to adopt the core/non-core distinction in compiling a fee award was well within the zone of its discretion. It follows that the district court did not abuse its discretion in

adopting the core/non-core distinction to compensate less demanding work at a lower rate. See Lilly v. City of New York, 934 F.3d 222, 234 (2d Cir. 2019) ("[I]t is highly unlikely that a paying client would agree to pay any person [a lawyer's full rate] for an hour of sending and receiving faxes, calling medical offices, and delivering papers.").

Nor is there any merit to the plaint that the district court applied the core/non-core distinction "mechanically." In its fee-award submissions, the Office identified numerous items in Attorney Almodóvar's billing records that appeared to correlate with accepted definitions of non-core work. The plaintiff offered nothing to rebut this taxonomy. Instead, he argued that the district court should not apply the distinction at all because Attorney Almodóvar is a sole practitioner who did not have associates to whom she could delegate routine tasks. This argument will not wash: that an attorney chooses to practice without partners or associates does not automatically entitle her to her full hourly rate for work routinely done by junior lawyers, paralegals, secretaries, or other lower-level personnel. See Lilly, 934 F.3d at 233-34. The district court did not abuse its discretion in segregating time expended on non-core tasks and earmarking such time for a reduced rate.

**3. Unproductive Work**. It is common ground that a district court, in fashioning a fee award, may reduce hours claimed

in a fee request for time spent on work that it determines to be "unproductive, excessive, or otherwise unnecessary." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). In the case at hand, the district court cut 75.5 hours related to work that it found to be superfluous. These hours stemmed from a series of fruitless motions and from what the district court deemed to be excessive time spent on preparation of the fee petition itself. With respect to the latter, the court reasoned that "counsel should have made a good faith effort to resolve the petition" through negotiation.

The district court's disallowance of these hours did not constitute an abuse of discretion. The plaintiff's contention that a court may discount work on losing claims but not on losing motions is baseless. See One Star, 546 F.3d at 39-40 (rejecting similar argument and affirming fee reduction when "district court plausibly could have determined that efficient counsel would not have invested the time . . . in litigating marginal issues"). Here, moreover, the court did not categorically exclude all time spent on unsuccessful motions: it did not cut any time expended by Attorney Almodóvar in connection with two other unsuccessful discovery motions. With respect to those losing motions, it concluded that the Office held "some responsibility for the matters requiring a court-mediated resolution."

Viewing the record as a whole, it is evident that the district court took pains to separate fluff from fiber. Where the plaintiff unsuccessfully pursued motions that the court found to be useless or unnecessary, it refused to include the time spent in the fee-award calculus; but where the plaintiff unsuccessfully pursued motions that the court found to be useful or reasonably necessary, it included the time spent in the fee-award calculus.

We discern no abuse of discretion. In constructing a fee award, "it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like." GOAL, 247 F.3d at 296. This winnowing is committed to the district court's informed judgment. See One Star, 546 F.3d at 40 (explaining that district court is "uniquely situated to determine whether [prevailing party]'s lawyers wasted their time (and the court's) by unreasonably or unnecessarily litigating issues that were hopeless, peripheral, or otherwise extraneous"). Nothing in the record suggests an arbitrary exercise of that judgment by the court below.

**4. Cryptic Entries**. The district court identified 251 "impermissibly vague entries" in Attorney Almodóvar's time sheets, comprising 276 hours of work. Those cryptic entries, the court said, did not provide it with "sufficient information to glean the reasonableness of the time spent." Seventy-four of the entries read only "Meeting with Client," fifty-five read only "Telephone

conference [with] Client," and over twenty-five read only "Electronic correspondence [to or from] Client." The court discounted these hours by thirty percent, effectively removing a total of 82.8 hours from the fee-award calculus.

We find no abuse of discretion. A court charged with awarding attorneys' fees should not be asked to buy a pig in a poke. We thus have made it plain that when fee-shifting is in prospect, attorneys are obliged to maintain contemporaneous time records. See Grendel's Den, 749 F.2d at 952. Those records must be at least minimally illuminating: they need not contain granular details, but they must contain some insight into the work performed. See Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 (1st Cir. 1986). Typically, such an entry will reveal "the date [the work] occurred, the kinds of work that were done and the percentage of time spent at each task." Id. Anything less will unfairly hamper the party who is expected to pay the freight in challenging "the accuracy of the records as well as the reasonableness of the time spent." Id. So, too, anything less will unfairly hamper the district court in performing its evaluative task. After all, "nebulous" entries amounting to "gauzy generalities" threaten to frustrate a district court's effort to fashion a fair and reasonable fee award. Lipsett, 975 F.2d at 938.

When time records are "too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like," the court need not accept them at face value. Torres-Rivera, 524 F.3d at 336. Instead, "the court may either discount or disallow those hours." Id. "Attorneys' time records, submitted in support of fee requests, often contain questionable entries, and the district court's discretion in separating wheat from chaff is quite broad." Id. at 340. Although such discretion "is not unbounded," we give considerable deference to that court's "equitable" judgments insofar as they are supported by "plausible rationale[s]." Id.

In assessing this type of discount, we do not write on a pristine page. We previously have affirmed just such an across-the-board reduction for entries that — like the entries here — "were not sufficiently detailed to enable the [district] court to determine whether the fees were excessive or duplicative." Tenn. Gas Pipeline Co. v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994). Similar to the entries discounted in this case, the entries in that case were delphic (written in terms such as "'Confer with co-counsel,' 'Confer with client,' 'Review materials,' 'Review documents,' and 'Legal Research'") and were submitted "without any indication of the subject matter involved." Id. Here, moreover — as noted by the district court in explaining its across-the-

board reduction — the plaintiff, when faced with the government's objection to these entries, failed to provide more detail.

The plaintiff's sole rejoinder is that Attorney Almodóvar had to shroud any records reflecting her communications with the plaintiff in view of the "delicate matter" of keeping "client confidences." This rejoinder falls short. Although we are sensitive to an attorney's duty to protect confidential client communications, that duty does not run at cross-purposes with the attorney's obligation to keep sufficiently transparent time records. An attorney's time sheets are generally not intended for public consumption; and when the billing entries are disclosed at the end of a case, confidentiality concerns are at a minimum. In all events, we see no reason why the general subject matter of a meeting or communication cannot be supplied so that the court may conduct the necessary review.[7] See Avgoustis v. Shinseki, 639 F.3d 1340, 1343 (Fed. Cir. 2011) ("Under numerous fee-shifting statutes, courts of appeals have consistently required that attorneys' fee applicants provide the general subject matter of their billing entries."); id. at 1344 (explaining "that such requirements [under the Equal Access to Justice Act] do not in

---

[7] For instance, embellishing a "conference with client" entry with, say, "re deposition preparation" or "re identification of potential witnesses" would not invade client confidentiality. It is precisely that sort of embellishment that may transform a generic time entry into a sufficiently informative time entry.

most cases invade the attorney-client privilege when applied to client communications"). Protecting client confidentiality neither excuses nor explains a fee-seeker's failure to come forward with records sufficient to establish his entitlement to the fees sought.

To sum up, it was not unreasonable for the district court to expect that the plaintiff would offer enough insight into the billing entries to allow an informed appraisal. This was especially true since the plaintiff was challenged on this point in the Office's opposition to the fee petition, yet passed on the opportunity to clarify the details of the overly cryptic billing entries in his reply memorandum. We conclude, therefore, that the court did not abuse its discretion in applying a thirty percent reduction to offset the paucity of meaningful information in the submitted time sheets.

5. **Overbilling and Inefficiency**. Attorneys' time records are not expected to be precise to the last second. The demands of practicing law are such that an attorney's time is normally recorded in relatively convenient increments. A conventional approach is to divide an hour into ten segments and record chargeable time in six-minute increments. See Valentin v. Municipality of Aguadilla, No. 03-1009, 2006 WL 2583757, *2 (D.P.R. Sept. 7, 2006) (collecting cases and explaining that "[o]ne tenth of an hour, or six minutes, is the usual billing increment"); see,

e.g., Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, No. 05-6757, 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009).

Even with six-minute increments, there will be some "breakage" favorable to the attorney. If, say, a particular task takes only four minutes, the time is still recorded as six minutes. In other words, any fraction of time left over in the last increment is typically rounded up. This means, of course, that the larger the time increments, the more the breakage will favor the attorney. See E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs, 724 F.3d 561, 576 (4th Cir. 2013) (stating "that the practice of quarter-hour billing may lead to overbilling"); Lucky Brand Dungarees, 2009 WL 466136, at *4 (explaining that billing in quarter-hour increments "tends substantially to overstate the amount of time spent . . . and . . . adds an upward bias in virtually all cases").

Here, Attorney Almodóvar recorded her time in increments of fifteen minutes. The district court applied "an across-the-board 25% cut to the remaining attorney's fee award to account for the time inflated by [this] quarter-hour billing and excessive time spent on reviewing discovery and communication with the client." In this regard, the court supportably found that Attorney Almodóvar's time sheets featured 525 fifteen-minute entries, many of which "related to tasks that should have taken only a few

- 33 -

minutes to complete." The plaintiff concedes that, due to Attorney Almodóvar's use of quarter-hour billing increments, her time entries "reflect more time than might be considered 'reasonable.'" The court below did not abuse its discretion in applying a reduction in light of counsel's quarter-hour billing praxis, particularly given the hundreds of fifteen-minute entries that — in the court's view — functioned to pad the amount of time charged. See Diffenderfer v. Gomez-Colon, 587 F.3d 445, 455-56 (1st Cir. 2009) (affirming "across-the-board fee reduction" when "plaintiffs had billed fifty or more menial items in quarter-hour increments when the actual task would have taken a negligible amount of time"); see also Yellowbook Inc. v. Brandeberry, 708 F.3d 837, 849 (6th Cir. 2013) ("Whether quarter-hour billing is reasonable is a matter within the discretion of the district court.").

Nor was counsel's persistent use of quarter-hour billing increments the only example of "inflated" billing identified by the district court in support of its across-the-board cut. The court also found that even though Attorney Almodóvar claimed to have "spent entire days reviewing discovery," it was "simply not reasonable to bill this many hours for document review," given the case's stunted progress. Finally, the court found that — above and beyond these failings — overbilling was "pervasive" in Attorney Almodóvar's time entries. By way of illustration, the court pointed to thirty minutes billed by the plaintiff's counsel for

reviewing a single voicemail from the Office — an entry that even the plaintiff now characterizes as "a mistake."

Notwithstanding this concession, the plaintiff disputes the broader sweep of the district court's findings. He argues that Attorney Almodóvar was staying on top of the case and that the court "penaliz[ed]" her "for being diligent." He further posits that plaintiffs in employment discrimination cases are plagued by "information asymmetry" inasmuch as the employer typically controls the evidence and witnesses. This dynamic, the plaintiff complains, is aggravated when the Office is the foe. So, he says, it was both reasonable and responsible for a sole practitioner to burn the midnight oil, poring over discovery, to do battle with a phalanx of government lawyers.

Although the plaintiff's arguments about information asymmetry are not without some force, the balancing of such case-specific factors lies squarely within the "wide discretion" of the district court. Fox, 563 U.S. at 839. As long as that court "calls the game by the right rules," id., it is "uniquely situated to determine whether . . . lawyers wasted their time," One Star, 546 F.3d at 40. So it is here.

Let us be perfectly clear. A district court charged with making a fee award may reduce the time claimed by the prevailing parties' lawyers. See, e.g., id. at 41-42; Grendel's Den, 749 F.2d at 955. In effecting such a reduction, though, the

court must make "reasonably explicit findings" and "spell out the whys and wherefores." Coutin, 124 F.3d at 337 (quoting Brewster, 3 F.3d at 493). The court below answered this call: it sifted through the parties' asseverations, examined their submissions, brought to bear its familiarity with the nuances of the litigation and its experience with the realities of legal practice, adequately explained its thinking, and knit those thoughts into a plausible rationale. No more was exigible.

The plaintiff has a fallback position, which we summarily reject. There is nothing to his remonstrance that the district court engaged in "double discount[ing]" by applying the across-the-board reduction for overbilling and inefficiency despite some of that time already being discounted as related to the performance of non-core tasks. The district court's analysis did not embody double discounting. See One Star, 546 F.3d at 42. The court simply tested both the proposed billing rate and the claimed number of hours expended, trimming each where appropriate to determine a reasonable fee award.

## III. CONCLUSION

We need go no further. The district court presided over this contentious litigation with great care and circumspection for more than three years. When the parties finally resolved their differences, the court's one remaining chore was to quantify the amount of attorneys' fees due to the plaintiff. For the most part,

the court skillfully traversed this rocky terrain, but it stumbled at two points. Although we affirm most of the embedded rulings contributing to the composition of the fee award, we reverse two of those rulings and remand the matter so that the amount of fees awarded can be augmented for the time reasonably expended by the plaintiff's counsel on settlement negotiations and in connection with other distinct cases (to the extent that such work was useful and ordinarily necessary vis-à-vis counsel's representation of the plaintiff in this matter). We therefore affirm all but two of the district court's embedded rulings, reverse those two rulings, vacate the fee award, and remand for further proceedings consistent with this opinion. The parties shall bear their own costs.

**Affirmed in part, reversed in part, vacated, and remanded**.